MC9DSERP

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          20 Cr. 160 (MKV)

5    JASON SERVIS,

6                                          Plea
               Defendant.
7    ------------------------------x

8
                                          New York, N.Y.
9                                          December 9, 2022
                                          11:00 a.m.
10

11   Before:

12                 HON. MARY KAY VYSKOCIL,

13                                          U.S. DISTRICT Judge

14                      APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     SARAH MORTAZAVI
17
          Assistant United States Attorney
18
     RITA MARIE GLAVIN
19   MICHAEL G. CONSIDINE
          Attorneys for Defendant
20

21   Also Present:

22   Mashaum Richards, FBI Special Agent

23

24

25
```

MC9DSERP

| | |
|---|---|
| 1 | (Case called; appearances noted) |
| 2 | THE COURT:  Good morning.  Thank you for being here. |
| 3 | As you know, I am Judge Vyskocil.  I have been |
| 4 | presiding over this case since it was filed almost three years |
| 5 | ago. |
| 6 | We are here this morning for a change of plea hearing |
| 7 | for Mr. Servis, correct? |
| 8 | MS. MORTAZAVI:  Yes, your Honor. |
| 9 | THE COURT:  Alright.  Just for the record, Mr. Servis, |
| 10 | you speak and understand English clearly, correct? |
| 11 | THE DEFENDANT:  Yes, your Honor. |
| 12 | THE COURT:  You don't need the services of an |
| 13 | interpreter? |
| 14 | THE DEFENDANT:  No, your Honor. |
| 15 | THE COURT:  Alright.  And, Ms. Mortazavi, are there |
| 16 | any victims entitled to notice under the Crime Victims Act? |
| 17 | MS. MORTAZAVI:  The victims have been notified of |
| 18 | today's proceeding, your Honor. |
| 19 | THE COURT:  Alright.  Thank you. |
| 20 | So by way of background, for the record, Mr. Servis |
| 21 | was arrested in this case in March of 2020.  The grand jury |
| 22 | later returned a superseding indictment, No. S-6, that charges |
| 23 | Mr. Servis with two felony counts.  Count 3 charges Mr. Servis |
| 24 | with conspiracy to adulterate and misbrand drugs with the |
| 25 | intent to defraud or mislead, and Count 4 charges him with mail |

MC9DSERP

1    and wire fraud conspiracy.

2              On November 17 of 2020, Mr. Servis pled not guilty to

3    both of those counts.  I'm informed that the government has now

4    entered into an agreement with Mr. Servis to accept a plea to

5    two counts in a superseding information, No. S-16.

6              Is that correct?

7              MS. MORTAZAVI:  That's correct, your Honor.

8              THE COURT:  Alright.  Do I have a signed copy of that?

9              Thank you.

10              Alright.  So it's my understanding that pursuant to

11    the agreement, the government will dismiss the two felony

12    counts in the S-6 indictment and accept a guilty plea to two

13    new charges:  One felony count charging the substantive offense

14    of introducing into interstate commerce adulterated or

15    misbranded drugs with the intent to defraud and mislead, and

16    that count involves the transportation in interstate commerce

17    of a drug similar to but more potent than Clenbuterol; and,

18    second, a misdemeanor drug adulteration and misbranding charge.

19    That charge involves shipment of SGF-1000.

20              Is that correct?

21              MS. MORTAZAVI:  That's correct, your Honor, with the

22    qualification that the government will move for dismissal of

23    the counts in the S-6 indictment after sentencing.

24              THE COURT:  Alright.  And those new charges are set

25    forth in the superseding information that you sent to me,

MC9DSERP

1    correct?

2            MS. MORTAZAVI:  Correct, your Honor.

3            THE COURT:  Alright.  There is no restitution that

4    attaches to those new charges, correct?

5            MS. MORTAZAVI:  Correct, your Honor.

6            THE COURT:  Mr. Servis is agreeing that he will admit

7    certain factual allegations as well, correct?

8            MS. MORTAZAVI:  That's right.

9            THE COURT:  He is agreeing to restitution, as I

10   understand it, to Count 4 of the original indictment?

11           MS. MORTAZAVI:  That's right, your Honor.

12           The statute contemplates that someone who is pleading

13   guilty pursuant to a plea agreement can voluntarily assume

14   restitution responsibility, and here we have included that

15   provision in the plea offer.

16           THE COURT:  So even though the two new counts don't

17   include -- restitution can't attach to the two new counts, he

18   can, nevertheless, voluntarily agree to pay restitution for a

19   count you intend to dismiss?

20           MS. MORTAZAVI:  That's right.  That's correct, your

21   Honor.  And we have the applicable statute cited in the plea

22   agreement.

23           THE COURT:  Alright.  Look, I'm just going to make

24   clear for the record, in our system, prosecutorial judgments

25   are solely the prerogative of the executive branch.  Here

MC9DSERP

1    that's the U.S. Attorney.  The Court has no role in connection

2    with those decisions.  I have no authority, other than to

3    confirm that Mr. Servis, in fact, allocutes to the charges that

4    the government brings that he is, in fact, guilty of the

5    charges to which he tells me he intends plea, and that he is

6    knowingly and voluntarily entering a plea of guilty.

7            So, with that, I'm advised that Mr. Servis now has an

8    application to waive indictment and to plead guilty to the new

9    two-count superseding information numbered S-16.

10           Is that correct, Ms. Glavin?

11           MS. GLAVIN:  Yes, your Honor.

12           THE COURT:  Alright.  So Count 1 of that superseding

13   information charges Mr. Servis with substantive drug

14   adulteration and misbranding with the intent to defraud or

15   mislead in violation of Title 21, United States Code Section

16   331 and 333 (a)(2).  Count 2 of that superseding information

17   charges him with misdemeanor drug adulteration and misbranding

18   in violation of Title 21, United States Code, Section 331 and

19   333(a)(1).

20           In particular, the government alleges in Count 1 that

21   from at least in or about 2018, through at least in or about

22   2019, Mr. Servis, with the intent to defraud and mislead,

23   caused to be transported in interstate commerce an unapproved,

24   improperly labeled drug similar to but more potent than

25   Clenbuterol, and he took steps to conceal that conduct from

1   racing regulators.

2          Count 2 alleges that from at least in or about

3   December of 2016, through at least in or about March of 2020,

4   Mr. Servis caused others to ship on his behalf SGF-1000, an

5   unapproved, improperly labeled injectable drug.

6          As I've just discussed with the government, there are

7   no restitution -- no restitution attaches to those charges, but

8   the superseding information does contain forfeiture allegations

9   with respect to both counts.

10          Is that correct, Ms. Mortazavi?

11          MS. MORTAZAVI:  That's correct, your Honor.

12          THE COURT:  Alright.  Ms. Glavin; is that correct?

13          MS. GLAVIN:  That's correct, your Honor.

14          THE COURT:  Alright.  So in advance of today's plea

15   hearing, the government submitted to me, I now have this

16   morning a signed copy I believe of the superseding information,

17   correct?

18          MS. MORTAZAVI:  Correct, your Honor.

19          THE COURT:  Alright.  I have an unsigned waiver of

20   indictment.

21          Has Mr. Servis had a chance to sign that form?

22          Ah.  Thank you.  Okay.

23          MS. GLAVIN:  You have a signed --

24          THE COURT:  Now I have a signed copy, yes.  It's just

25   been handed up to me, what was sent.  That's why I asked did he

MC9DSERP

1    -- what was sent to me yesterday was unsigned.

2              Okay.  I have now a copy of a fully executed plea

3    agreement, which contains, as I said, certain factual

4    stipulations.  And I have -- do we have the forfeiture?

5              THE DEPUTY CLERK:  I do.

6              THE COURT:  Okay.  I'm sorry.  I now have a signed

7    copy of a proposed consent preliminary order of forfeiture or

8    money judgment.

9              So the waiver of indictment will be entered in the

10   record as Government Exhibit 1.  The plea agreement will be

11   entered as Government Exhibit 2.

12             Mr. Servis, before I accept any plea from you, there

13   are a number of questions that I need to ask you under oath,

14   and I'm asking you those to assure myself that you are

15   voluntarily waiving your right to be indicted by a grand jury,

16   and that your plea will be a valid plea.  I may at times cover

17   a point more than once, or I may cover things that were

18   addressed in various of these forms or documents that I just

19   referenced.  If I do that, it is because it's very important

20   that you understand what's happening today.

21             So I'm going to ask you, please, if at any point you

22   don't understand something that I'm addressing with you, let me

23   know, and I will try to clarify it, or you may have the

24   opportunity at any point to speak with your lawyers.  Just let

25   me know, please, if you'd like to do that.

MC9DSERP

1              Alright.  Will you do that, please?

2              THE DEFENDANT:  Yes, ma'am.  Yes, ma'am.

3              THE COURT:  Alright.  Ms. Dempsey, would you

4     administer the oath, please?

5              THE DEPUTY CLERK:  Please stand.  Raise your right

6     hand.

7              (Defendant sworn)

8              THE COURT:  Alright.  Mr. Servis, do you understand

9     that you have now just solemnly promised to tell the truth, and

10    that if you answer any of my questions falsely, your false or

11    untrue answers may later be used against you in another

12    prosecution for perjury or making a false statement?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Alright.  Can you tell me, sir, how old

15    are you?

16             THE DEFENDANT:  Sixty-five.

17             THE COURT:  How far did you go in school?

18             THE DEFENDANT:  Graduated 12th grade.

19             THE COURT:  You told me you speak and understand

20    English perfectly clearly, right?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  It's your native language?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Are you a citizen of the United States?

25             THE DEFENDANT:  Yes, ma'am.

MC9DSERP

1        THE COURT:  You were born here?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Are you now or have you recently been

4   under the care of a medical doctor or other health care

5   professional?

6        THE DEFENDANT:  I mean, I have a doctor, and I had a

7   hip replacement maybe eight months ago.

8        THE COURT:  Are you taking any medications in

9   connection with that, pain medications or anything else?

10        THE DEFENDANT:  No.  No.

11        THE COURT:  Okay.  You have no other health conditions

12   for which you're being treated or medicated?

13        THE DEFENDANT:  I have surgery scheduled February 3rd

14   for a hip replacement on my other side, your Honor.

15        THE COURT:  Alright.  But you're not taking any

16   medications or anything else for any conditions?

17        THE DEFENDANT:  I have a prescription for Valium,

18   which I take for sleep at night, but I haven't taken -- I

19   didn't take anything in the last 24 hours.

20        THE COURT:  I'm going to ask you that in a minute.

21        Are you now or have you recently been under the care

22   of a mental health professional?

23        THE DEFENDANT:  No.

24        THE COURT:  Have you ever been treated or hospitalized

25   at any time for any mental illness?

MC9DSERP

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Have you been treated or hospitalized for

3    any type of addiction, including to drugs or alcohol?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Have you ever been addicted to drugs or

6    alcohol, even if you haven't been hospitalized?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  In the past 24 hours, have you taken any

9    drugs, including medicines, any kind of pills?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Have you had any alcohol to drink in the

12    last 24 hours?

13          THE DEFENDANT:  I had a glass of wine about 8:00 last

14    night.

15          THE COURT:  Is your mind clear today?

16          THE DEFENDANT:  Yes, it is.

17          THE COURT:  Do you understand what we're doing today?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you have any questions?

20          THE DEFENDANT:  Not at this time.

21          THE COURT:  Alright.  Are you feeling well physically?

22    In other words, are you healthy?

23          THE DEFENDANT:  I'm starting to show my age.  I've got

24    some things going on, but --

25          THE COURT:  So are we all.  Is there anything about

MC9DSERP

1    your health that prevents you from entering into an informed

2    plea today?

3              THE DEFENDANT:  No, your Honor.

4              THE COURT:  Alright.  Are you represented by counsel?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  By whom are you represented?

7              THE DEFENDANT:  Rita Glavin and Mike Considine.

8              THE COURT:  Are you satisfied with Ms. Glavin and

9    Mr. Considine, their representation of you?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Do either counsel have any doubt as to Mr.

12   Servis' competence to waive indictment and enter an informed

13   plea today?

14             MS. MORTAZAVI:  No, your Honor.

15             MS. GLAVIN:  No, your Honor.

16             THE COURT:  Alright.  Mr. Servis, your attorney has

17   informed me that you wish to waive indictment, and to withdraw

18   your plea of not guilty to the S-6 indictment, and to enter a

19   plea of not guilty to Count 1 and Count 2 of the superseding

20   information.

21             Do you, in fact, wish to do that today?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Alright.  Have you fully discussed your

24   case with Ms. Glavin and Mr. Considine, including the charges

25   to which you tell me you want to plead guilty and any possible

MC9DSERP

```
 1    defenses to those charges?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  Have you discussed with them the

 4    consequences of entering a plea of guilty?

 5              THE DEFENDANT:  Yes, your Honor.

 6              THE COURT:  Are you satisfied with your attorneys and

 7    their advice to you in that regard?

 8              THE DEFENDANT:  Yes, your Honor.

 9              THE COURT:  Alright.  On the basis of Mr. Servis'

10    responses to my questions and my observation of his demeanor

11    this morning, I do find that he's fully competent to waive

12    indictment and to enter an informed plea at this time.

13              Now, I've been given this morning a fully executed

14    copy of a waiver of indictment form.  Ms. Glavin, do you have a

15    copy there for Mr. Servis?

16              MS. GLAVIN:  I don't have a copy of the waiver form.

17    I think all the copies you have.

18              THE COURT:  Ms. Mortazavi's giving you one.

19              MS. GLAVIN:  Okay.  I have one, your Honor.

20              THE COURT:  Okay.  So first question for you and

21    Ms. Mortazavi, this is not dated.  Did this get signed this

22    morning?  Should I fill in a date of today?

23              MS. MORTAZAVI:  It was signed this morning, your

24    Honor.  I believe Ms. Glavin put the date beside her signature.

25              THE COURT:  She did.
```

MC9DSERP

1          Ms. Glavin, are you okay with me adding mine?

2          MS. GLAVIN:  Absolutely.

3          THE COURT:  Mr. Servis, does your signature appear on

4    the copy of the waiver of indictment form I've been given?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Before you signed it, did you discuss it

7    with your lawyers?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Did they explain to you what this document

10   does?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand you're under no

13   obligation to waive indictment?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  You understand that's what you're doing by

16   having signed this document?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Do you understand if you don't waive

19   indictment and the government wants to prosecute you on the

20   charges that are contained in the information, it would have to

21   present its case to a grand jury, which may or may not indict

22   you?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you understand that, by waiving

25   indictment, you are giving up your right to have the case

MC9DSERP

1    presented to a grand jury?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Do you understand what a grand jury is?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Did you discuss that with your lawyers?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Do you understand a grand jury is a body

8    made up of 23 people, of whom 16 must be presented in order to

9    conduct business, and that you could not be charged unless 12

10   of those people voted for indictment based on a finding of

11   probable cause?

12           THE DEFENDANT:  Yes, I do understand.

13           THE COURT:  Does either counsel know of any reason

14   that I shouldn't find that Mr. Servis has knowingly and

15   voluntarily waived his right to be indicted by a grand jury?

16           Ms. Mortazavi?

17           MS. MORTAZAVI:  No, your Honor.

18           THE COURT:  Ms. Glavin?

19           MS. GLAVIN:  No, your Honor.

20           THE COURT:  Alright.  I do find Mr. Servis knowingly

21   and voluntarily waived his right to be indicted by a grand

22   jury, and I thereby authorize the filing of the information.

23           Ms. Dempsey, here's the original.

24           THE DEPUTY CLERK:  Thank you.

25           THE COURT:  Alright.  Mr. Servis, before I accept or

MC9DSERP

1    turn to accepting your plea, I need to ask you certain

2    additional questions.  Those questions are intended to satisfy

3    myself that you wish to plead guilty because you are, in fact,

4    guilty, and that you fully understand your rights and the

5    consequences of your plea.

6              So I want to begin by describing to you certain rights

7    that you have under the Constitution and laws of the United

8    States.  You will be giving up these rights if you enter a plea

9    of guilty, but please listen very carefully, and I remind you

10   if you do not understand something I'm saying or describing,

11   please stop me and I'll try to clarify, or you can speak to Ms.

12   Glavin and Mr. Considine.

13             THE DEFENDANT:  Thank you, your Honor.

14             THE COURT:  Alright.  Under the Constitution and laws

15   of the United States, you have a right to a speedy and public

16   trial by a jury on the charges against you which are contained

17   in the information.

18             Do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Do you understand you have the right to

21   plead not guilty and to continue to plead not guilty to the

22   charges against you?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you understand that if there were a

25   trial, you would be presumed innocent and the government would

MC9DSERP

1    be required to prove you guilty by compelling evidence and

2    beyond a reasonable doubt?

3         Do you understand that?

4         THE DEFENDANT:  Yes, your Honor.

5         THE COURT:  Do you understand you would not have to

6    prove at trial that you are innocent?

7         THE DEFENDANT:  Yes.  Yes, your Honor.

8         THE COURT:  Do you understand that if there were a

9    trial, a jury made up of 12 people selected from this district,

10   which is the Southern District of New York, would have to agree

11   unanimously in order to find you guilty?

12        Do you understand that?

13        THE DEFENDANT:  Yes, your Honor.  Yes, your Honor.

14        THE COURT:  Do you understand that if there were a

15   trial, you would have the right to be represented by an

16   attorney at trial and at all other stages of the proceedings,

17   and if you could not afford one, an attorney would be provided

18   to you free of cost?

19        Do you understand that?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Do you understand if there were a trial,

22   you would have a right to see and to hear all of the witnesses

23   against you, your lawyers could cross-examine those witnesses,

24   you would have the right to have your attorney object to the

25   government's evidence and to offer evidence on your behalf if

MC9DSERP

1    you so desired, you would have the right to have witnesses

2    required to come to court to testify in your defense, and you

3    would have the right to testify yourself, but you would not be

4    required to testify.

5              Do you understand that?

6              THE DEFENDANT:  I understand, yes, your Honor.

7              THE COURT:  Do you understand if there were a trial

8    and you decided not to testify, no adverse inference could be

9    drawn against you based on your decision not to testify, and by

10   that I mean the jury would be instructed that it could not

11   assume that because you didn't testify, you were hiding

12   something, or you were guilty?

13             Do you understand that?

14             THE DEFENDANT:  I do.

15             THE COURT:  Do you understand that if you were

16   convicted at trial, you would have the right to appeal that

17   verdict?

18             THE DEFENDANT:  I understand.

19             THE COURT:  Do you understand each and every one of

20   these rights that I've just outlined for you?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Do you have any questions about these

23   rights?

24             THE DEFENDANT:  No, your Honor.

25             THE COURT:  Do you want to speak to your lawyers?

MC9DSERP

1          THE DEFENDANT:  We spent yesterday afternoon going

2    over everything.

3          THE COURT:  You don't have to talk to him, but I'm

4    just reminding you you have a right at any point to speak to

5    your lawyers if you wish to do so.

6          THE DEFENDANT:  I think at this point I'm fine.

7          THE COURT:  Okay.  You're fine you said, right?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Okay.  You have no questions of me at this

10   point; is that correct?

11         THE DEFENDANT:  I'm sorry?  Could you repeat that?

12         THE COURT:  You have no questions at this point?

13         THE DEFENDANT:  Could I confer with counsel for a

14   moment?

15         THE COURT:  Sure.  Of course.

16         THE DEFENDANT:  I'm fine, your Honor.  Thank you.

17         THE COURT:  Alright.  Thank you.

18         So do you understand, Mr. Servis, that by entering a

19   plea of guilty today, you're going to give up each and every

20   one of these rights that I've outlined; you will be waiving

21   these rights?

22         THE DEFENDANT:  Yes, your Honor, I understand.

23         THE COURT:  Do you understand that you will also be

24   waiving any possible claim that your Constitutional rights were

25   violated and you will not have a trial?

MC9DSERP

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you understand that by entering a plea

4    of guilty, you will also have to give up your right not to

5    incriminate yourself, because in a few moments, I will ask you

6    questions about what you did in order to satisfy myself that

7    you were guilty as charged, and you will have to admit and

8    acknowledge your guilt?

9          Do you understand?

10          THE DEFENDANT:  I understand, yes.

11          THE COURT:  Do you understand that you can change your

12    mind right now and refuse to enter a plea of guilty?

13          THE DEFENDANT:  I understand.

14          THE COURT:  You understand you do not have to enter

15    this plea if for any reason you do not want to do so?  You

16    fully understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Alright.  Mr. Servis, I've referred

19    several times to a superseding information in this case

20    numbered S-16.

21          Do you have a copy of that information that contains

22    the new charges against you?

23          THE DEFENDANT:  Yes, I do have a copy.

24          THE COURT:  Alright.  Have you read this information?

25          THE DEFENDANT:  Yes, your Honor.

MC9DSERP

1          THE COURT:  Did your lawyers discuss it with you?

2          THE DEFENDANT:  Yes.  Extensively.

3          THE COURT:  Alright.  I can read that superseding

4    information out loud right now in open court if you would want

5    me to do so.

6          Do you want me to read it or do you waive public

7    reading?

8          THE DEFENDANT:  I waive public reading, your Honor.

9          THE COURT:  Alright.  Thank you.

10         You are charged, Mr. Servis, in Count 1 of the

11   superseding information with drug adulteration and misbranding

12   with the intent to defraud or mislead in violation of Title 21,

13   United States Code section 331 and 333(a)(2).  That is a felony

14   count.

15         Do you understand that charge?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Alright.  You're charged in Count 2 of the

18   superseding information with drug adulteration and misbranding

19   in violation of Title 21, United States Code section 331 and

20   333(a)(1).  That is a misdemeanor count.

21         Do you understand that that is the charge against you?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Pursuant to the plea agreement, it's the

24   Court's understanding that the government will accept a guilty

25   plea to the charges in Count 1 and 2 of this superseding

MC9DSERP

1   information.

2           Is that your understanding?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Alright.  Ms. Mortazavi, then would you

5   please state the elements of the offenses with which Mr. Servis

6   has been charged in Count 1 and Count 2 of the superseding

7   information?

8           MS. MORTAZAVI:  Certainly, your Honor.

9           If this case were to proceed to trial, the government

10  would have to prove the following elements beyond a reasonable

11  doubt:

12          For Count 1, first, the introduction into interstate

13  commerce of drugs or causing another to do the same;

14          Second, proof that the drugs introduced were

15  adulterated or misbranded;

16          And, third, that there was proof of intension to

17  defraud or mislead.

18          And the government would further have to prove venue

19  by a preponderance of the evidence.

20          With respect to Count 2, the government would have to

21  prove the following elements:

22          First, that the defendant introduced into interstate

23  commerce drugs, or caused another to do the same;

24          And, second, that those drugs were adulterated and

25  misbranded;

MC9DSERP

1          And the government would also have to prove venue for

2     that charge by preponderance of the evidence.

3          THE COURT:  Alright.  Thank you.

4          Mr. Servis, do you understand that the government

5     would have to prove each and every part or element of the

6     offenses to which you're charged as just laid out by the

7     government's lawyer, Ms. Mortazavi, beyond a reasonable doubt

8     at trial if you did not enter a plea of guilty?

9          THE DEFENDANT:  I understand.

10          THE COURT:  Do you understand the matters that the

11     government would have to prove if you were to go to trial?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Alright.  Let's talk for a few moments,

14     Mr. Servis, about the potential penalty for the charges to

15     which you tell me you intend to plead guilty.

16          Do you understand that the maximum possible term of

17     imprisonment for the offense in Count 1 to which you are

18     pleading guilty is a term of imprisonment of three years?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Do you understand that the maximum

21     possible term of imprisonment for the offense in Count 2 to

22     which you are pleading is a term of imprisonment of one year?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you understand that, therefore, the

25     total maximum possible term of imprisonment you face is four

MC9DSERP

1    years?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that Count 1 can also

4    include a maximum term of supervised release after you are

5    released from prison of one year?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Do you understand that Count 2 can also

8    include a maximum term of supervised release of up to one year?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you understand that the total maximum

11   term of supervised release that you face is, therefore, two

12   years?

13             THE DEFENDANT:  I understand.  Yes, your Honor.

14             THE COURT:  Alright.  In addition to these

15   restrictions on your liberty, the maximum possible punishment

16   for Count 1 and 2 also includes certain financial penalties.

17             Do you understand that?

18             THE DEFENDANT:  I understand, your Honor.

19             THE COURT:  Do you understand that the maximum fine

20   allowed for Count 1 is $10,000, or twice the gross pecuniary

21   gain relating to the offense, or twice the loss to persons

22   other than yourself as a result of the offense, whichever is

23   greater?

24             Do you understand that?

25             THE DEFENDANT:  I understand, your Honor.

MC9DSERP

1          THE COURT:  Do you understand that the maximum fine

2    allowed for Count 2 is $1,000, or twice the gross pecuniary

3    gain relating to the offense, or twice the loss to persons

4    other than yourself as a result of the offense, whichever is

5    greater?

6          THE DEFENDANT:  I understand, your Honor.

7          THE COURT:  Do you understand that the Court must also

8    impose mandatory special assessments of $100 for Count 1 and

9    $25 for Count 2?

10          THE DEFENDANT:  I understand.

11          THE COURT:  Do you understand all of the potential

12    financial penalties that I have just outlined?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Do you understand that, as part of your

15    plea agreement, you've agreed to forfeit to the United States a

16    sum of money representing proceeds traceable to the commission

17    of the offense in Count 1 and 2, to which you are pleading

18    guilty?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Now, I have from the parties what is

21    labeled a consent preliminary order of forfeiture/money

22    judgment.

23          Ms. Glavin, that is on consent?

24          MS. GLAVIN:  Yes, your Honor.

25          THE COURT:  Alright.  Mr. Servis, have you reviewed

MC9DSERP

this proposed order of forfeiture/money judgment with your

lawyers?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  You consent to the terms?

        THE DEFENDANT:  Yes.

        THE COURT:  Alright.  I will sign that order today and

it will become part of the judgment that's entered at the time

of sentencing.

        Ms. Dempsey, here you go.

        That consent preliminary order of forfeiture provides

for a money judgment in the amount of $311,760.

        Is that your understanding, sir?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Alright.  Do you understand that that

forfeiture amount will not reduce any fine, any restitution,

any costs of imprisonment, or any other penalty that the Court

may impose?

        THE DEFENDANT:  I understand, your Honor.

        THE COURT:  Alright.  I also understand that part of

your agreement with the government, you have agreed to pay

restitution with respect to Count 4 of the S-6 indictment.

        Is that your understanding?

        THE DEFENDANT:  Yes.  I understand, your Honor.

        THE COURT:  It's the Court's understanding that that's

in the amount of $163,932.

MC9DSERP

1           Is that your understanding?

2           THE DEFENDANT:  Yes.  Yes, your Honor.

3           THE COURT:  I now want to talk about the supervised

4    release aspect of the potential penalty you face to be sure you

5    understand that aspect.

6           Supervised release means that you'll be subject to

7    monitoring when you're released from prison.  Certain terms and

8    conditions will be imposed, and if you violate any of those

9    terms and conditions, you could be reimprisoned without a jury

10   trial.  If you are on supervised release and you do not comply

11   with any of the set terms or conditions, you can be returned to

12   prison for up to one year, and you will be given no credit for

13   the time you served in prison as a result of your sentence, or

14   the time that you spent on post-release supervision prior to

15   the violation.

16          Do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  You should also understand that there is

19   no parole in the federal system.  If you are sentenced to

20   prison, you will not be released early on parole.  There is a

21   limited opportunity to earn credit for good behavior, but you

22   would have to serve at least 85 percent of the time to which

23   you are sentenced, and there might or might not be

24   opportunities to earn credit under the First Step Act.

25          Do you understand that?

MC9DSERP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you further understand that if I accept

3   your guilty plea and adjudge you guilty, that adjudication may

4   deprive you of certain valuable civil rights, including the

5   right to vote, the right to hold public office, the right to

6   serve on a jury, and the right to possess any kind of firearm

7   if you currently have or could otherwise attain such rights?

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Alright.  Now, you've told me you are a

11  United States citizen, and I accept your representation in that

12  regard obviously, but I am obligated to inform you that if for

13  any reason that were not the case, entering a plea of guilty

14  could have an impact on your immigration status.

15         Did you discuss with your lawyers your immigration

16  status and any possible consequences of entering a plea of

17  guilty?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  I want to talk to you now about the

20  sentencing guidelines under federal law.  Under current law,

21  there are what are called sentencing guidelines that judges

22  must consider in determining your sentence.

23         Have you spoken with Ms. Glavin and Mr. Considine

24  about the sentencing guidelines?

25         THE DEFENDANT:  Yes, your Honor.

MC9DSERP

1          THE COURT:  Do you understand that, in addition to

2     considering the sentencing guidelines in imposing sentence, I

3     must also consider certain additional factors that are set

4     forth in a statute at 18 United States Code section 3553?

5          THE DEFENDANT:  Yes.  Yes.

6          THE COURT:  Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you understand that I have discretion,

9     while taking the guidelines into account, to sentence you to

10    any period of imprisonment up to four years?

11         THE DEFENDANT:  I understand.

12         THE COURT:  Do you understand that even though the

13    plea agreement includes a stipulated or agreed sentencing

14    guideline calculation, I cannot determine what your sentence

15    will be until after a presentence report is completed by the

16    probation department and you and the government and each of

17    your lawyers have an opportunity to review that report --

18         THE DEFENDANT:  I understand.

19         THE COURT:  -- to challenge any facts reported by the

20    probation office?

21         THE DEFENDANT:  I understand.

22         THE COURT:  Now, according to the plea agreement which

23    I've been given, you have agreed that the guidelines range

24    applicable to the offense in Count 1 and Count 2, to which

25    you're pleading guilty, is 108 to 135 months, but because the

MC9DSERP

maximum statutory sentence is less than that guidelines range,

the statutory maximum sentence of 48 months of incarceration is

the guideline sentence for the offense to which you intend to

plead guilty.

Is that your understanding?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Alright.  The plea agreement further

provides that the applicable fine range for your case is 30,000

to $300,000.

Is that consistent with your understanding?

THE DEFENDANT:  It is, your Honor.

THE COURT:  Do you understand that that stipulation,

both with respect to the term of incarceration and the fine,

doesn't bind the Court and it doesn't bind the probation

department as to the facts on which it's based, how to apply

the guidelines to the facts, or what will be an appropriate

sentence in your case?

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that I may decide to

impose a sentence that is outside of the guidelines range?

THE DEFENDANT:  I understand.

THE COURT:  Do you understand that if your attorney or

anyone else has attempted to estimate or predict what your

sentence will be, their estimate or prediction could be wrong?

MC9DSERP

1          THE DEFENDANT:  I understand.

2          THE COURT:  No one, not your lawyer, not the

3    government or its lawyers can or should give you any assurance

4    as to what your sentence will be, since that sentence cannot be

5    determined until after the probation department report is

6    completed, I've ruled on any challenges to the report, and I've

7    determined what an appropriate sentence is.

8          Do you understand that?

9          THE DEFENDANT:  I understand, your Honor.

10         THE COURT:  Do you also fully understand, even if your

11   sentence is different from what your attorney or anyone else

12   told you it might be, or if it's different from what you expect

13   or you hope it might be, or if you're surprised or disappointed

14   by your sentence, if I accept a plea of guilty from you today,

15   you will be bound to that plea and you will not be allowed to

16   withdraw your plea of guilty?

17         Do you understand that?

18         THE DEFENDANT:  I understand, your Honor.

19         THE COURT:  Do you understand that even if the

20   government doesn't oppose or take a position on what your

21   attorneys will ask me to impose as your sentence, I'm obligated

22   to impose whatever sentence I believe is appropriate under the

23   circumstances and the applicable law, and if I accept your plea

24   today, you will have no right to withdraw your plea thereafter?

25         THE DEFENDANT:  I understand, your Honor.

1                    THE COURT:  Do you understand that you may have the

2       right to appeal your sentence under certain circumstances, even

3       if your plea agreement provides that you are waiving your right

4       to appeal?

5                    THE DEFENDANT:  I understand.

6                    THE COURT:  Are you now serving any federal or state

7       sentence?

8                    THE DEFENDANT:  No, your Honor.

9                    THE COURT:  Are you being prosecuted for any crimes

10      other than those which we're discussing today?

11                   THE DEFENDANT:  No, your Honor.

12                   THE COURT:  Alright.  I have been given a copy of what

13      I'm told is the plea agreement between the parties.  It is a

14      letter on the letterhead of the United States Department of

15      Justice, the United States Attorney for the Southern District

16      of New York, addressed to Rita Glavin, in re *United States v.*

17      *Jason Servis*, S-16, 20 CR 160 MKV.  It is an 8-page letter.

18                   Do you have a copy of that in front of you, Mr.

19      Servis?

20                   THE DEFENDANT:  Yes, Your Honor.

21                   THE COURT:  Did you sign this plea agreement?

22                   THE DEFENDANT:  Yes, your Honor.

23                   THE COURT:  Is that your signature above where your

24      name is typed on the left-hand side of page 8?

25                   THE DEFENDANT:  Yes, your Honor.

MC9DSERP

1          THE COURT:  Before you signed this, did you read the

2     agreement carefully?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Did you discuss it with your attorneys

5     before you signed it?

6          THE DEFENDANT:  Extensively.

7          THE COURT:  Did your attorneys explain to you all of

8     the terms and conditions of this agreement?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Did you fully understand the agreement

11     before you signed it?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you have any questions about the

14     agreement?

15          THE DEFENDANT:  No, your Honor.

16          THE COURT:  Do you understand as part of your plea

17     agreement you've agreed to admit certain additional specific

18     facts?

19          MS. GLAVIN:  Your Honor, with respect to the plea

20     agreement, the language is that the defendant is not going to

21     challenge the facts.  We are not disagreeing with the

22     government on facts, but I just want you to know that that's

23     what's in the agreement.

24          THE COURT:  Alright.  The agreement does read that you

25     will not challenge certain facts.

MC9DSERP

1              Is that, in fact, your understanding?

2              THE DEFENDANT:  It is, your Honor.

3              THE COURT:  Do you understand that you're under no

4    obligation to enter into such an agreement?

5              THE DEFENDANT:  I understand.

6              THE COURT:  Do you understand that your plea agreement

7    provides that you are giving up or waiving your right to appeal

8    or to litigate or challenge your sentence under a statute, 28

9    United States Code section 2255 and/or 2241 if I sentence you

10   at or below the sentencing guideline -- the guideline sentence

11   that's set forth in the plea agreement and that we talked about

12   earlier?

13             THE DEFENDANT:  I understand, your Honor.

14             THE COURT:  Do you understand that you're under no

15   obligation to waive your rights to appeal or otherwise litigate

16   your sentence?

17             THE DEFENDANT:  I understand, your Honor.

18             THE COURT:  Do you understand that your plea agreement

19   provides that you are waiving any right to appeal or attack

20   your conviction on the basis that the government has not

21   provided you with discovery materials, exculpatory materials,

22   except information establishing factual innocence, or any

23   material to impeach the government's witnesses against you?

24             THE DEFENDANT:  I understand, your Honor.

25             THE COURT:  Do you understand you're under no

MC9DSERP

```
1    obligation to waive those rights?

2              THE DEFENDANT:  I understand, your Honor.

3              THE COURT:  Do you understand that your plea agreement

4    provides that you will not move for a downward departure under

5    the sentencing guidelines or seek any adjustment under the

6    guidelines that is not described in that plea agreement, but

7    that you may make arrangements for a lower sentence under that

8    general sentencing statute that I talked about earlier known as

9    3553(a)?

10             THE DEFENDANT:  I understand, your Honor.

11             THE COURT:  Do you understand that you're under no

12   obligation to enter into such an agreement?

13             THE DEFENDANT:  I understand.

14             THE COURT:  Do you understand that as part of the plea

15   agreement, you have agreed not to appeal any forfeiture penalty

16   that is less than or equal to $311,760, and, as I said earlier,

17   the government submitted that consent preliminary order of

18   forfeiture in that amount?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  You understand you're not obligated to

21   enter into such an agreement or to consent to the proposed

22   forfeiture order?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you understand that as part of your

25   plea agreement, you've agreed to make restitution in the amount
```

MC9DSERP

1    of $163,932, reflecting restitution owed to victims of Count 4

2    on the S-6 indictment?

3                    THE DEFENDANT:  Yes, I understand, your Honor.

4                    THE COURT:  That's the count that charged you with

5    wire fraud, correct?

6                    MS. MORTAZAVI:  That's correct, your Honor.

7                    THE COURT:  You understand that, Mr. Servis?

8                    THE DEFENDANT:  Yes, your Honor.

9                    THE COURT:  You understand you're under no obligation

10   to make any such agreement?

11                   THE DEFENDANT:  Yes, your Honor.

12                   THE COURT:  Do you understand your plea agreement

13   provides that you are waiving any challenge to your guilty

14   plea, your conviction, and your sentence based on any

15   immigration consequences of your plea, regardless of any advice

16   you may have received about any immigration consequences?

17                   THE DEFENDANT:  Yes, your Honor.

18                   THE COURT:  You understand you're under no obligation

19   to make this waiver?

20                   THE DEFENDANT:  Yes, your Honor.

21                   THE COURT:  Alright.  Does this plea agreement that

22   we've been discussing reflect accurately your complete and

23   total understanding of the entire agreement between the

24   government, your attorneys, and you?

25                   THE DEFENDANT:  Yes, your Honor.

MC9DSERP

1              THE COURT:  Is everything you understand about your

2     plea and about your sentence up to this point covered in this

3     plea agreement?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Has anything that you believe you've

6     agreed to been left out?

7              THE DEFENDANT:  Can I confer with counsel?

8              THE COURT:  Sure.

9              MS. GLAVIN:  Yes, your Honor.  If you could just

10    repeat the last question, we're prepared.

11             THE COURT:  Yes.  I asked, has anything that you

12    believe you've agreed to with the government been left out of

13    this agreement?

14             THE DEFENDANT:  No.  I'm aware of everything.

15             THE COURT:  So everything is covered by this agreement

16    as far as you understand?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Okay.  Apart from what's contained in this

19    plea agreement, have any promises been made to you in order to

20    get you to plead guilty?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  Have you been threatened or coerced in any

23    way to get you to plead guilty?

24             THE DEFENDANT:  No, your Honor.

25             THE COURT:  Knowing everything that we've talked about

MC9DSERP

1    up to this point, do you still wish to plead guilty pursuant to

2    the plea agreement to the two counts in the superseding

3    information?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Alright.  Ms. Mortazavi, would you please

6    summarize at this point the evidence that the government has

7    with respect to Mr. Servis?

8              MS. MORTAZAVI:  Certainly, your Honor.

9              The government's proof would consist of the following,

10   among other things:  Intercepted calls of the defendant and his

11   co-conspirators discussing the use of adulterated and

12   misbranded drugs on race horses --

13             THE COURT:  I'm sorry.  Can you repeat that?

14             MS. MORTAZAVI:  Sure.  Certainly, your Honor.

15             Intercepted calls between the defendant and his

16   co-conspirators discussing the use of adulterated and

17   misbranded drugs on race horses, that includes the use of the

18   FDA approved version of Clenbuterol, a prescription drug

19   administered without proper prescriptions; that includes the

20   use of a compounded, more potent form of Clenbuterol, which was

21   essentially an adulterated and misbranded bronchodilator; and

22   that includes the uses of SGF-1000.  Those calls include the

23   discussion of administration of those drugs and the

24   transportation of those drugs, as well as efforts to avoid

25   regulatory scrutiny.

MC9DSERP

1          The government's proof would also consist of false

2    veterinary bills by the veterinary practice that serviced the

3    defendant's horses; those bills concealed charges for

4    adulterated and misbranded drugs, including Clenbuterol and

5    SGF-1000; it would consist of lay and expert witness testimony

6    setting forth the ways in which the drugs at issue were

7    adulterated and misbranded; it would include testimony

8    regarding the applicable racing rules and regulations that

9    dictate the manner in which these drugs were administered

10   violated the racing rules.  We would have lay and expert

11   testimony that the drugs administered required prescriptions,

12   were not administered with valid prescriptions, and were given

13   to others to distribute with no valid prescription.  And we

14   would have proof that the adulterated and misbranded drugs at

15   issue were manufactured outside of New York state and traveled

16   into New York state and, specifically, through the Southern

17   District of New York.

18          THE COURT:  Alright.  Ms. Glavin, I guess at this

19   point I should ask you, do you know of any valid reasoned why

20   Mr. Servis would prevail at trial or why he should not be

21   permitted to plead guilty at this time?

22          MS. GLAVIN:  No, your Honor.

23          THE COURT:  Alright.  Mr. Servis, then I need for you

24   to tell me now what you did that makes you guilty of the crimes

25   to which you are entering a plea.  I need you to tell me what

MC9DSERP

```
 1   you did, where you did it, when you did it, with whom you did
 2   it.
 3            MS. GLAVIN:  Your Honor, with respect to Mr. Servis'
 4   allocution on this, we prepared for each count a -- it's a
 5   prepared written allocution that we have reviewed with Mr.
 6   Servis to satisfy the elements that are required for Count 1.
 7            THE COURT:  Okay.
 8            MS. GLAVIN:  Which is the felony introduction.
 9            THE COURT:  Yes.
10            MS. GLAVIN:  Introduction of misbranded drugs, as well
11   as an allocution to satisfy the elements of Count 2, which is
12   the misdemeanor introduction of misbranded drugs, which does
13   not require a criminal intent, Count 2.
14            THE COURT:  Right.
15            MS. GLAVIN:  We have reviewed these two written
16   allocutions with the government, and we are in agreement that
17   the facts as he will read them satisfy the elements for both
18   Count 1 and Count 2.  So --
19            THE COURT:  Alright.  So after Mr. Servis allocutes
20   and I ask any follow-up questions I might have, I intend to ask
21   each side whether you believe that allocution satisfies the
22   elements.  So you'll have an opportunity after he speaks.
23            MS. GLAVIN:  Yes.
24            Okay.  So with respect to Count 1, your Honor, Mr.
25   Servis has an allocution.
```

MC9DSERP

1          THE DEFENDANT:  Your Honor, on or about May 8, 2019, I

2    caused to be sent from New Jersey to New York a compounded form

3    of Clenbuterol.  I understood this compounded drug was more

4    effective on horses than the FDA-approved version of

5    Clenbuterol.  I understood that this drug was not the FDA

6    approved form of Clenbuterol and prohibited by racing rules.

7    This liquid drug was in a soda bottle and I caused to be

8    concealed in a bucket of poultice to avoid detection.

9          THE COURT:  In a bucket of what, for the court

10   reporter, please?

11          MS. GLAVIN:  Poultice, p-o-u-l-t-i-c-e.

12          THE COURT:  Go ahead, Mr. Servis.

13          THE DEFENDANT:  Okay.  I understood that bottle

14   traveled by horse van to New York.

15          THE COURT:  You what?  You understood it --

16          THE DEFENDANT:  Yes.  That the bottle traveled by

17   horse van to New York.

18          THE COURT:  From your barn in New Jersey?

19          THE DEFENDANT:  Correct, your Honor.

20          THE COURT:  Is that your allocution with respect to

21   Count 1?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Give me one moment.  At the time that you

24   did this or thereafter, did you intend to hide what you were

25   doing from racing regulators?

MC9DSERP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  What steps did you take in that regard?

3          MS. GLAVIN:  Your Honor, with respect to this, I think

4     the allocution qualifies, and as Mr.  --

5          THE COURT:  I didn't hear anything about intent in

6     there.

7          MS. GLAVIN:  Yes.  He said "this liquid drug was in a

8     soda bottle that I caused to be concealed in a bucket of

9     poultice to avoid detection."

10          THE COURT:  Okay.

11          MS. GLAVIN:  That was the specific allocution.

12          THE COURT:  Okay.  From whom were you -- nevermind

13     with regard to that.

14          Alright.  You have a separate allocution for Count 2?

15          MS. GLAVIN:  Yes, your Honor.

16          THE DEFENDANT:  Yes, your Honor.

17          MS. GLAVIN:  With respect to Count 2, Mr. Servis has

18     an allocution.

19          THE DEFENDANT:  Between approximately late 2016 and

20     March 2020, based upon the recommendation of my veterinarian in

21     New York, I caused other veterinarians that I worked with to

22     order SGF-1000 for those veterinarians to administer to horses

23     I trained.

24          MS. GLAVIN:  And I believe that the government has a

25     proffer with respect to the SGF-1000, your Honor.

MC9DSERP

1          THE COURT:  With regard to venue --

2          MS. GLAVIN:  And also with regard to it being

3   misbranded and adulterated, which we do not challenge.

4          THE COURT:  Okay.

5          MS. MORTAZAVI:  Your Honor, with respect to venue on

6   Count 1, I can specifically state that the concealed,

7   compounded bronchodilator, which was a version of Clenbuterol,

8   when transported from New Jersey to the racetrack in Belmont,

9   passed through the Southern District of New York, not just into

10  New York state.

11         THE COURT:  Hold on.  Do you agree with that?

12         MS. GLAVIN:  He does not know that for a fact, your

13  Honor.

14         THE COURT:  I'm asking you, do you agree to that?

15         MS. GLAVIN:  Yes.  We do not object to it.  And to the

16  -- because it went by a van, I don't know how the van went to

17  New York.

18         THE COURT:  Are you challenging venue?

19         MS. GLAVIN:  No.

20         THE COURT:  Okay.

21         MS. GLAVIN:  No.  We waive venue, your Honor.

22         MS. MORTAZAVI:  With respect to Count 2, your Honor,

23  the drugs did pass through the Southern District of New York,

24  but the defendant has also waived venue as a provision of his

25  plea agreement, which is only page 3.  So he does not challenge

MC9DSERP

1    venue as to Count 2.  And I can proffer --

2             THE COURT:  Hold on.

3             Correct, Ms. Glavin?

4             MS. GLAVIN:  Yes, your Honor.

5             THE COURT:  Okay.  Thank you.

6             MS. MORTAZAVI:  And I can proffer that the drug in

7    question was misbranded and adulterated because it was, among

8    other things, unapproved, mislabeled, and manufactured by an

9    entity that was not registered with the FDA.

10             THE COURT:  Alright.  Does Mr. Servis challenge any of

11   that?

12             THE DEFENDANT:  No, your Honor.

13             MS. GLAVIN:  No, your Honor.

14             THE COURT:  Alright.  Give me one moment, please.

15             Mr. Servis, do you challenge that between 2016 and

16   2019, after your vet recommended SGF-1000 to you, you caused

17   veterinarians to order hundreds of bottles of the injectable

18   drug SGF-1000 for the veterinarians to administer to horses

19   that you trained?

20             Do you challenge that?

21             THE DEFENDANT:  May I confer with counsel?

22             THE COURT:  Sure.

23             MS. GLAVIN:  Your Honor, just so the record is clear,

24   that the Court is reading from page 1 of the plea agreement

25   that Mr. --

MC9DSERP

1          THE COURT:  Correct.

2          MS. GLAVIN:  -- Servis signed, and it is page 1,

3    paragraph 1.

4          THE COURT:  Correct.

5          MS. GLAVIN:  And I think, Mr. Servis, you have a copy

6    of this in front of you?

7          THE DEFENDANT:  Yes.  Yes, I do.

8          MS. GLAVIN:  And have you read through each of these

9    paragraphs 1 through 6?

10         THE DEFENDANT:  Yes, I have.

11         MS. GLAVIN:  Do you challenge any of the facts listed

12   in paragraphs 1 through 6?

13         THE DEFENDANT:  No, I do not.

14         THE COURT:  Alright.  Ms. Glavin, I do intend to go

15   through them.

16         MS. GLAVIN:  That's fine, your Honor.

17         THE COURT:  Mr. Servis, the first sentence I just

18   read, do you challenge that in any respect?

19         THE DEFENDANT:  No, your Honor.

20         THE COURT:  And do the horses that you trained and

21   administered -- that you trained include Maximum Security?

22         MS. GLAVIN:  Wait a minute.  Wait a minute.  Excuse

23   me.

24         Is that in this --

25         THE COURT:  It's a question I'm asking him.

MC9DSERP

```
1              MS. GLAVIN:  Your Honor, could we just have a moment?

2              THE COURT:  Sure.

3              MS. GLAVIN:  Your Honor, I just would refer the Court

4     to --

5              MS. MORTAZAVI:  Your Honor, may I have a moment to

6     confer with defense counsel?

7              THE COURT:  Sure.

8              You can make your record if you want, Ms. Glavin.  Go

9     ahead.

10             MR. CONSIDINE:  Your Honor, may we have a moment to

11    confer with the government?

12             THE COURT:  Sure.  I already said yes.

13             MS. GLAVIN:  Your Honor, with respect to -- Mr.

14    Servis' allocution is sufficient under Rule 11.  I would refer

15    the Court to the sentencing guidelines provision 3E1.1 under

16    acceptance of responsibility.  It is note (1)(a) and it

17    provides in relevant part that a defendant is not required to

18    volunteer or affirmatively admit relevant conduct beyond the

19    offense of conviction in order to obtain a reduction under (a).

20    A defendant may remain silent in respect to relevant conduct

21    beyond the offense of conviction without affecting his ability

22    to retain a reduction under this subsection.

23             THE COURT:  That's fine.  He can decline to answer if

24    that's what he chooses to do.

25             MS. GLAVIN:  Your Honor, I just -- at this point in
```

MC9DSERP

```
 1    time, I don't want this to cause any type of an issue with Mr.

 2    Servis.  All of this will be addressed in our sentencing

 3    submissions.  I'm sure that the government will have something

 4    to say about this in the presentence report, but I don't think

 5    it is necessary for a guilty plea today.  And I'm sure we will

 6    make submissions on it.  And I would ask that the Court stay

 7    with what is Rule 11.

 8              THE COURT:  Is Mr. Servis declining to answer my

 9    question about whether the horses he trained and to which

10    SGF-1000 was administered include Maximum Security?

11              MS. GLAVIN:  Your Honor, he did not administer himself

12    SGF-1000.

13              THE COURT:  I did not say he did.

14              MS. GLAVIN:  Okay.  But, yes, Mr. Servis will admit

15    that Maximum Security is one of the horses to which a

16    veterinarian administered SGF-1000.

17              THE COURT:  Okay.

18              MS. GLAVIN:  Yes.  He would admit that, and that I'm

19    sure will be part of the sentencing --

20              THE COURT:  Okay.  And that is the horse that shortly

21    before he was arrested placed first in the Saudi Cup --

22              MS. GLAVIN:  Your Honor --

23              THE COURT:  -- a $20 million --

24              MS. GLAVIN:  Your Honor, I'm actually objecting.  I'm

25    objecting to this.
```

MC9DSERP

1              THE COURT:  That's fine.

2              MS. GLAVIN:  I've been --

3              THE COURT:  That's fine, Ms. Glavin.

4              MS. GLAVIN:  I've been doing a lot of plea allocutions

5     and this is one --

6              THE COURT:  Ms. Glavin, don't go there.

7              Alright.  He can decline to answer.  That's fine.

8              MS. GLAVIN:  I don't think it is relevant for purposes

9     of this proceeding today.

10             THE COURT:  You've made your record.

11             Mr. Servis, do you challenge that the veterinarian

12    repeatedly assured you that SGF-1000 was legal and not

13    violative of racing rules as reflected in intercepted calls in

14    June and August of 2019, and that MediVet, the manufacturer of

15    SGF-1000, marketed it as a substance containing growth factors

16    that increased stamina and endurance, as well as a substance

17    that was safe and legal for all equine disciplines and does not

18    test or swab because it is an all natural, regenerative

19    therapy?

20             Do you challenge that?

21             THE DEFENDANT:  No, your Honor.  That's correct.

22             THE COURT:  Do you challenge -- I'm sorry.  I didn't

23    mean to interrupt you.

24             THE DEFENDANT:  That's correct.

25             THE COURT:  Okay.  Do you challenge that in

MC9DSERP

September of 2019 the New York State Gaming Commission released

an advisory stating, "all forms of growth hormone and growth

factors (e.g. MediVet SGF-1000, RMR, TB-1000) are prohibited"

under racing rules and that the advisory stated that the rule

had "been in effect since August of 2018" and that "these

substances were prohibited by a previous version of this rule

in July of 2012?"

        Do you challenge that fact?

        THE DEFENDANT:  No, your Honor.

        THE COURT:  Do you challenge that you were aware of

the advisory and continued to have your veterinarian administer

SGF-1000 in New York?

        THE DEFENDANT:  May I confer with counsel?

        THE COURT:  Sure.

        THE DEFENDANT:  I am not challenging that, your Honor.

        THE COURT:  Alright.  Do you challenge that a single

bottle of SGF-1000 costs up to $300, and that you approved

veterinarian bills that your New York veterinarian provided to

owners knowing that those bills included concealed charges for

SGF-1000, specifically that veterinarians falsely billed

SGF-1000 under the line item, "acupuncture and chiropractic?"

        THE DEFENDANT:  I don't challenge that, your Honor.

        THE COURT:  Do you challenge that under the Food, Drug

and Cosmetic Act, which is known as the FDCA, and related

regulations, SGF-1000 was misbranded and/or adulterated insofar

1    as it was a new animal drug without FDA approval and/or was

2    manufactured in facilities not registered with the FDA?

3              Do you challenge that?

4              THE DEFENDANT:  No, your Honor.

5              THE COURT:  Do you challenge that on or about

6    August 14 of 2019 you were approached without advance warning

7    by New York state troopers, and you were questioned regarding

8    your use of SGF-1000, and that you falsely stated that you only

9    used SGF-1000 on "four or five" race horses at most, and that

10   you had previously stated in private conversations with the

11   trainer, Jorge Navarro, that SGF-1000 was administered to

12   virtually all of your trained horses?

13             THE DEFENDANT:  I don't challenge that, your Honor.

14             THE COURT:  Alright.  Do you challenge that

15   Clenbuterol, a prescription drug, was regularly administered to

16   your horses during the course of the offense conduct without a

17   specific prescription issued in the specific name of every

18   individual horse that received the Clenbuterol, and that one of

19   your New York vets, Alexander Chan, informed you on May 21 of

20   2019 that Chan had issued Clenbuterol prescriptions under the

21   name of a single horse, Sunny Ridge, for use on another horse,

22   to avoid scrutiny from racing regulators?

23             THE DEFENDANT:  I'm not challenging that, your Honor.

24             THE COURT:  Am I correct that you trained Sunny Ridge?

25   Correct?

MC9DSERP

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Alright.  Do you challenge that you caused

3    to be transported an adulterated and misbranded compound form

4    of Clenbuterol which you understood was more effective than the

5    FDA approved version of Clenbuterol known as Ventipulmin when

6    administered to horses, and that on or about May 8, 2019, you

7    arranged to transport that drug from your barn in New Jersey to

8    your barn at Belmont -- I assume you mean Belmont Race Track?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  -- by causing the drug to be placed in a

11   soda bottle that was concealed in a bucket of poultice to avoid

12   detection, and that bottle was transported in a horse van?

13          You don't challenge that, correct?

14          THE DEFENDANT:  I do not.

15          THE COURT:  That's, in fact, the facts you just told

16   me in connection with your allocution, right?

17          THE DEFENDANT:  Yes, your Honor.

18          MS. GLAVIN:  Your Honor, may I just have a moment with

19   Mr. Considine?

20          THE COURT:  Sure.

21          MS. GLAVIN:  Yes.  Your Honor, I have to just -- I

22   want to apologize.  I did not mean any type of disrespect.  You

23   and I --

24          THE COURT:  I understand.

25          MS. GLAVIN:  Okay.

MC9DSERP

1          THE COURT:  I understand that.

2          MS. GLAVIN:  Alright.  I don't want to get at cross

3     hairs with the Court here.

4          THE COURT:  You're not at cross hairs.  You're doing

5     your job.  I understand that.

6          MS. GLAVIN:  Okay.

7          THE COURT:  As am I.

8          MS. GLAVIN:  I know.  I get it.

9          Okay.  One thing, having gone through -- your Honor

10    having gone through what's in the plea agreement and asking

11    about Maximum Security in particular, I just want to put the

12    Court on notice, it's not relevant to this particular hearing,

13    but our sentencing submission with respect to Mr. Servis we

14    anticipate, you know, will include reference to the fact that

15    his -- none of his horses in connection with this investigation

16    are alleged to have had masking agents, and with respect to the

17    Clenbuterol, which there has been some discussion about, we

18    expect our sentencing submission will say along the lines that

19    these horses were tested for Clenbuterol in post-race testing

20    and they did not test positive for Clenbuterol.

21          That's not for today, but that will be --

22          THE COURT:  No, it's not.  He also has recorded

23    intercepted phone conversations with Dr. Rhein in which they

24    both discuss the fact that it was not testable.  Correct?

25          MS. GLAVIN:  They also had recorded conversations with

MC9DSERP

1    Dr. Rhein, and this will be at sentencing, in which Dr. Rhein

2    repeatedly assured --

3              THE COURT:  Yes.

4              MS. GLAVIN:  -- Mr. Servis that this was legal.

5              THE COURT:  Correct.  That was one of the facts I put

6    on the record that he didn't challenge.  Correct?

7              MS. GLAVIN:  And that we will be addressing at

8    sentencing.

9              THE COURT:  Okay.

10             MS. GLAVIN:  Thank you, your Honor.

11             THE COURT:  Alright.  Mr. Servis, at the time you did

12   what you told me you did and the other additional facts that I

13   asked you about, did you know that what you were doing was

14   wrong and illegal?

15             MS. GLAVIN:  Your Honor, with respect to Count 1.

16   Remember, Count 2 does not have a criminal intent.  So for

17   Count 1.

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  That goes to intent, but Count 2, did he

20   know that he was engaging in wrongful conduct by putting

21   misbranded and adulterated drugs into interstate commerce?

22             MS. GLAVIN:  Your Honor, that's not a required

23   element, but what I think will happen at the sentencing

24   submission is that he was told repeatedly that this was legal.

25   He didn't order the SGF-1000 himself.  His vets did.

MC9DSERP

1          THE COURT:  Yes, but he asked the vets to do it.  He

2     just said he didn't challenge that.

3          MS. GLAVIN:  We're not challenging that, but for him

4     to know under the FDA rules whether it was misbranded, there

5     will be a fair amount at sentencing about what he had been told

6     by Kristian Rhein and assured and what he understood.

7          THE COURT:  Yes.  You've already put it on the record.

8     I've put it on the record --

9          MS. GLAVIN:  Yes.

10         THE COURT:  -- in connection with the facts you don't

11    challenge.

12         MS. GLAVIN:  Yes.  So with respect --

13         THE COURT:  Okay.  Does the government wish for any

14    further factual matters to be addressed in connection with Mr.

15    Servis' plea allocution?

16         MS. MORTAZAVI:  No, your Honor.

17         I'll say, because there has been a colloquy at this

18    point about what's going to be brought up at sentencing, that

19    the government has its own version of what happened and

20    Mr. Servis' state of mind that I'm sure will come to light at

21    sentencing.

22         THE COURT:  Alright.  Does the government believe,

23    based on my discussions and Mr. Servis' allocution, that there

24    is an adequate factual basis to support a plea of guilty to

25    each of the two counts?

MC9DSERP

```
 1              MS. MORTAZAVI:  Yes, your Honor.

 2              THE COURT:  Including Count 2?

 3              MS. MORTAZAVI:  Yes, your Honor.

 4              THE COURT:  Alright.  Ms. Glavin, is it your view,

 5   your position that there is an adequate factual basis to

 6   support a plea of guilty to each of the two counts?

 7              MS. GLAVIN:  Yes, your Honor.

 8              THE COURT:  Alright.  Mr. Servis, now that we've

 9   talked about your plea agreement and the possible penalties of

10   the crime to which you tell me you intend to plead guilty, we

11   can turn to entry of a plea.

12              Are you prepared to proceed?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  Alright.  Would you please stand, sir?

15              Mr. Servis, how do you plead to Count 1 of the

16   superseding information?

17              THE DEFENDANT:  Guilty.

18              THE COURT:  How do you plead with respect to Count 2

19   of the superseding information?

20              THE DEFENDANT:  Guilty, your Honor.

21              THE COURT:  Are you pleading guilty because you are,

22   in fact, guilty?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Are you pleading guilty voluntarily?

25              THE DEFENDANT:  Yes, your Honor.
```

MC9DSERP

1           THE COURT:  Are you doing so of your own free will?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  No one has threatened you, coerced you,

4    made any promises or threats to you to get you to plead guilty,

5    correct?

6           THE DEFENDANT:  Correct.

7           THE COURT:  Ms. Glavin, are there any other questions

8    you believe I should ask Mr. Servis in connection with his

9    plea?

10          MS. GLAVIN:  No, your Honor.

11          THE COURT:  Ms. Mortazavi, any additional questions

12   you believe I should ask Mr. Servis in connection --

13          MS. MORTAZAVI:  No, your Honor.

14          THE COURT:  Alright.  Mr. Servis, you have

15   acknowledged that you are, in fact, guilty as charged in Counts

16   1 and 2 of the superseding information.  I am satisfied you

17   know your rights, including your right to go trial, you're

18   waiving them voluntarily, and that you are aware of the

19   consequences of your plea, including the sentence that may be

20   imposed.  I find that your plea is entered knowingly and

21   voluntarily, and it is supported by an independent basis in

22   fact containing each of the essential elements of the two

23   offenses.  I therefore accept your guilty plea, and I enter a

24   judgment of guilty of Count 1 of the superseding information,

25   drug adulteration and misbranding with intent to defraud in

MC9DSERP

violation of 21 -- I'm sorry, 21 United States Code section 331
and 333(a)(2), and Count 2 of the superseding information, drug
adulteration and misbranding in violation of 21 United States
Code section 331 and 333(a)(1).

          You may be seated.

          THE DEFENDANT:  Thank you.

          THE COURT:  Alright.  So, Mr. Servis, before we
conclude, I just want to talk to you about the process from
this point going forward.  So I mentioned briefly earlier but I
want to explain to you a little more fully that the next step
is that the probation office needs to prepare a presentence
report which will assist me in sentencing you.  In order to
prepare that report, the probation office needs to interview
you.  It is very important that the information you give to the
probation office be truthful and it be accurate.  That report,
as I say, is very important to me in deciding what your
sentence will be.

          When the probation office prepares the report in
draft, you will have an opportunity to review it in draft
format; and you and your lawyers, also the government and its
lawyers, will have the right to challenge that report,
challenge any fact contained in it, and to file any objections
before I sentence you.  You obviously will also have the right
to address the Court directly if you wish to do so.  You are
not obligated to, but you certainly have that right.

MC9DSERP

1          So is there any reason why I shouldn't direct a

2     presentence report to be prepared at this time?

3          MS. MORTAZAVI:  No reason.

4          THE COURT:  Ms. Glavin and Mr. Considine, I assume one

5     of you or both of you wish to be present for the interview.

6          MS. GLAVIN:  That's correct.

7          THE COURT:  Alright.  I therefore order no interview

8     take place of Mr. Servis unless Ms. Glavin or Mr. Considine or

9     both of them are present.

10         But, Ms. Glavin, would you please reach out to the

11    probation office and set up an interview to take place, if

12    possible, within the next two weeks?  I do understand we have

13    the holidays coming up.

14         MS. GLAVIN:  I'll contact them.  I can't assure that

15    they can do that --

16         THE COURT:  Of course not.  And I understand the

17    holidays --

18         MS. GLAVIN:  Yes.

19         THE COURT:  So just work with them.  If there are

20    issues in terms of timing then going forward, you all need to

21    let me know if there are adjustments that need to be made.

22         MS. GLAVIN:  Of course.

23         THE COURT:  I also remind you, Ms. Mortazavi, to

24    please provide a statement of facts to the probation office

25    within the same 14 days.

1          And then I just remind everyone it's important that

2     you give any timely comments, suggestions to the probation

3     office, please.

4          Defense submissions will then be due two weeks before

5     sentencing; government submissions one week before sentencing.

6          The Court has availability on May 8 for sentencing.

7     Does that present a problem?

8          MS. GLAVIN:  Yes.  Let me just take a look at the

9     calendar.  I was thinking a little bit later in May if that

10    were possible, but I just --

11         THE COURT:  It gets problematic, because I have a

12    trial each of the following weeks.  We can always --

13         MS. GLAVIN:  It's just that I'm in the middle of

14    preparing for a trial.

15         Is the Court going to be sitting five days a week

16    while you're on trial?

17         THE COURT:  Yes.

18         MS. GLAVIN:  You are?

19         THE COURT:  Yes.

20         MS. GLAVIN:  Then would it be possible to do it then

21    the first week of June?

22         THE COURT:  How about May 18?  Does that work?  I'm

23    told we have some time that day.

24         MS. GLAVIN:  Yes.  That works for me.

25         MS. MORTAZAVI:  That works for the government, your

MC9DSERP

1   Honor.

2           MS. GLAVIN:  Okay.

3           THE COURT:  Okay.  We'll do May 18 then for

4   sentencing, 11:00 a.m.  Does that work?

5           MS. GLAVIN:  Yes, that works, your Honor.

6           MS. MORTAZAVI:  Yes, your Honor.

7           THE COURT:  Alright.  11:00 a.m. on May 18.  Let me

8   just put it on the calendar.

9           So, Mr. Servis, I just remind you that failure to be

10  truthful with the probation office or with the Court could have

11  an adverse effect on your sentence.  It could subject you to

12  further prosecution.

13          I reserve the right specifically to deny you the

14  two-level reduction in the calculation of your sentencing

15  guidelines offense level for acceptance of responsibility if

16  you don't fully cooperate with the probation office.  Not that

17  I'm expecting that, but I need to advise you.

18          THE DEFENDANT:  Okay.  Thank you.

19          THE COURT:  Alright.  So, as I have told the parties,

20  I have signed the consent preliminary order of forfeiture.  I

21  want to put the parties on notice right now that if there are

22  any issues with respect to that forfeiture, the preliminary

23  order right now, or with respect to the restitution, you need

24  to talk to teach other and call it to my attention well in

25  advance of sentencing so that I can conduct whatever hearings

MC9DSERP

1    need to be conducted, if there are any.

2            Understood?

3            MS. MORTAZAVI:  Understood, your Honor.

4            THE COURT:  Ms. Glavin?

5            MS. GLAVIN:  Yes, your Honor.

6            THE COURT:  Alright.  Mr. Servis, let me just remind

7    you that all of the conditions that were imposed on you in

8    connection with your bail remain in effect between now and the

9    date of your sentencing.

10           THE DEFENDANT:  Thank you, your Honor.

11           THE COURT:  Alright.  Do you understand?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  And you obviously need to be in the

14   courtroom for sentencing at the time and the date that I have

15   set.

16           THE DEFENDANT:  Yes.

17           THE COURT:  I'd ask counsel to please order a copy of

18   the transcript of today's proceeding, and do put it on the

19   docket.  I do go back and review it carefully in connection

20   with preparing for sentencing.

21           Alright.  Is there anything else we should talk about?

22           MS. MORTAZAVI:  Nothing further from the government.

23           THE COURT:  Ms. Glavin?

24           MS. GLAVIN:  No, your Honor.  It's good to see you.

25           (Adjourned)